[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case, which was tried to the court, involves the purchase of a yacht and the trade-in of another yacht. The plaintiff is Harry V. Keefe, Jr., who brought a six-count complaint against Norwalk Cove Marina, Inc. (Cove Marina) and James Gardella, the president and owner of Cove Manna (defendants).
In the first count of the complaint, the plaintiff alleges that he and the defendants entered into an agreement dated April 11, 1994, which is entitled "Boat Invoice and Order Form, "in which the plaintiff agreed to purchase an Azimut motor yacht for $1,725,000, and the defendants agreed to pay the plaintiff $653,900 as a trade-in allowance for the plaintiff's Hatteras yacht. The plaintiff further alleges that the defendants have refused to pay him this trade-in allowance for the Hatteras. In the second count, the plaintiff alleges that the defendants guaranteed that he would receive $653,900 as a trade-in, and that he relied on this representation and guarantee in deciding to purchase the Azimut. In the third count, the plaintiff contends that the defendants agreed to pay him 12.5% interest per year on the trade in allowance of $653,900, beginning on May 6, 1994, the date that the plaintiff made final payment on the purchase of the Azimut, and had failed to do so. In the fourth count, the plaintiff claims that the defendants, at the time they made representations and a guarantee concerning the trade-in allowance and interest, never intended to make such payments and that this conduct constitutes fraud. In the fifth count, the plaintiff alleges that the defendants breached the covenants of good faith and fair dealing, and the sixth count claims a violation of General Statutes § 42-110b et seq., the Connecticut Unfair Trade Practices Act (CUTPA).
The defendants denied the material allegations of the complaint and filed two special defenses. The first special defense alleges that the plaintiff retained custody and control of the Hatteras, and never transferred title to or traded it to the defendants. In the second special defense, the defendants allege that the Hatteras was not in proper condition and order. The April 11, 1994 agreement provided that all machinery on the trade-in would be in good working order and that Cove Marina CT Page 2570 could "adjust" the trade-in price "if necessary." The defendants also filed a counterclaim alleging that in connection with the purchase of the Azimut, the plaintiff withheld $30,000 from the purchase price pending certain alterations and changes to the yacht, and that these were completed, but the plaintiff refused to pay the $30,000.
This case began in the fall of 1993, when the plaintiff noticed an ad in a trade magazine about a motor yacht known as Azimut 65, which was being built in Viareggio, Italy. The plaintiff flew to Italy, met with the manufacturer, Vitelli, and agreed to purchase this yacht for $1,725,000. The defendants did not play any role in the negotiations for the purchase, which were conducted directly between the plaintiff and the manufacturer in Italy. However, the manufacturer did advise the plaintiff that Cove Marina was its dealer and agent in the United States and would be responsible for performing any warranty work on the Azimut and for coordinating the purchase and shipment of the yacht to this country. In addition, Cove Marina, at the request of the plaintiff, shipped certain items to Italy for installation on Azimut. The evidence disclosed that in or about June of 1994, the Italian manufacturer paid Cove Marina a commission of $300,000 in connection with the plaintiff's purchase of the Azimut.
The plaintiff and James Gardella first met in February of 1994, to discuss the purchase of the Azimut and the trade-in of the plaintiff's own motor yacht, a 1991 model 52 foot Hatteras. The plaintiff contends that the defendants guaranteed to pay him $653,900 as a trade-in allowance for the Hatteras and interest on that amount of $80,000 a year. Mr. Gardella testified that the defendants agreed only to use their best efforts to sell the Hatteras as a broker or consignee, and to pay the plaintiff whatever the boat sold for. According to Mr. Gardella, the figure of $653,900 was not a guarantee but only an estimate of the anticipated sales price. Mr. Gardella also testified that the defendants did not purchase the Hatteras or take it "in-trade." The evidence disclosed that over the course of the next year and a half, beginning in April, 1994, when the Hatteras was brought to Cove Marina, the defendants used their best efforts to sell the Hatteras, including advertising and displaying it at several trade shows. The evidence further indicated that the defendants performed some relatively minor repairs on the Hatteras, but the boat was generally in good working order when it arrived at the Cove Marina. The defendants did not sustain the allegations of CT Page 2571 their special defense that the trade-in allowance should have been adjusted.
In the meantime, however, the market for yachts of that size had taken a turn for the worse, and the defendants did not succeed in selling plaintiff's Hatteras. In October, 1995, the plaintiff, with the acquiescence of the defendants, sent the Hatteras to Florida where it was listed for sale by a broker at $775,000 and ultimately sold for $525,000 in April of 1996.[1]
The first issue is whether the defendants actually guaranteed and agreed to pay the plaintiff $653,900, regardless of the ultimate sales price of the Hatteras. If the answer is yes, is the plaintiff also entitled to interest on that sum, as well as punitive damages, attorney's fees, and costs in connection with the sale of the Hatteras in Florida?
After evaluating the testimony of the witnesses and the exhibits admitted in evidence, the court concludes that the plaintiff should recover $128,900, the difference between the trade-in allowance of $653,900 and the ultimate sale price of $525,000, but that he is not entitled to the other claimed damages. It could be argued that the central issue of whether the defendants guaranteed the plaintiff a specific trade-in allowance is simply a matter of one person's word against another. However, liability on the part of the defendants is based on the wording of the April 11, 1994 written agreement between the plaintiff and Cove Marina. This document was signed by the plaintiff and on behalf of the defendant Cove Marina by Jack Haight, an employee of the defendant corporation, with the knowledge and approval of the individual defendant, Jack Gardella, and the corporation itself. The defendants never attempted to repudiate the contract until litigation ensued and until after they had accepted the $300,000 commission on the sale of the Azimut to the plaintiff as set forth in the agreement.
The agreement of April 11, 1994 further indicates that the sale price of the Azimut was $1,725,000, plus optional equipment and transportation charges. The agreement also indicates that Cove Marina was giving the plaintiff an "allowance for used boat trade-in" of $653,900.[2] This trade-in figure was used to calculate and pay the "Conn. Sales Tax on Boat." Thus, the defendants paid a sales tax based on sale price, less allowance for trade-in, referred to as the "cash difference." and there was no indication at the trial that the defendants amended the CT Page 2572 claimed credit for a trade-in to reflect the actual sale of the Hatteras for $525,000. Moreover, the defendants did not indicate on the April 11, 1994 statement that the plaintiff would be entitled to a credit for whatever the price at which the Hatteras was ultimately sold. The agreement provides that the Hatteras was taken by the defendants as a trade-in. The testimony offered by the defendants attempting to repudiate the validity of the agreement and their claim that this format was used simply as an accommodation for the plaintiff was not credible. The plaintiff has sustained his burden of proving that there was a valid written agreement in which the defendants committed to a trade-in allowance of a certain figure, $653,900, and that they have refused to comply with this agreement. Thus, the plaintiff is entitled to recover the difference between the guaranteed trade-in and the eventual sales price.
It should be noted that the April 11, 1994 agreement does not reflect what actually occurred in this transaction. In reality, the plaintiff paid the manufacturer in Italy the full purchase price without any credits, and the defendants never took title to the Hatteras or paid the plaintiff any money. The defendants, however, prepared the April agreement which provided for a specific trade-in allowance for the Hatteras, as if the Hatteras had in fact been traded in, and the sales tax was calculated on the difference between that figure and the total purchase price. The agreement did not require that the defendants take title to the Hatteras or provide for what would happen if the Hatteras was sold for a price less than the specified trade-in. The court believes that the defendants are bound by this contract and the obligation therein to pay a specific trade-in allowance.
Also, again in connection with the first count of the complaint, the plaintiff claims that he is entitled to the difference between the trade-in allowance and the net amount of $480,800 that he received on the sale in Florida of his Hatteras. The parties did not make an agreement to this effect and no logical reason to calculate the plaintiff's damages in this manner has been offered by the plaintiff. Thus, the plaintiff is awarded the difference between the guaranteed trade-in allowance and the selling price of the Hatteras, not the net amount.
The plaintiff also seeks to recover the cost of transporting the Hatteras to Florida and the expenses associated with the sale of his yacht, including dock space for approximately six months before the boat was sold in April, 1996, as well as insurance, CT Page 2573 taxes, fuel and labor, in the total approximate amount of $56,000. It was the plaintiff's own decision to send his Hatteras to Florida for sale, despite on-going efforts by the defendants to sell his boat. Thus, there is no reason to credit the plaintiff with the expenses of sale in Florida as no proof was offered that the parties had so agreed.
The second count of the complaint claims promissory estoppel on the theory that the plaintiff agreed to purchase the Azimut only because of the defendants' promise to pay a guaranteed trade-in allowance. Although the court finds in favor of the plaintiff to recover such allowance, it is also noted that long before the plaintiff and defendants had heard of each other, the plaintiff had gone to Italy and agreed to purchase the Azimut and had dealt directly with the manufacturer, including negotiating the purchase price. Thus, the plaintiff has not proved the allegations of the second count.
The next issue concerns the plaintiff's claim of 12.5% per year interest on the trade-in-allowance as set forth in the third count of the complaint. The plaintiff claims that the defendants were unable to borrow the money to actually pay him the trade-in allowance and buy the Hatteras and that he agreed to and did personally "finance" the defendants for this sum. The plaintiff claims interest in the approximate amount of $180,000.
The plaintiff was unable to produce any written document in which the defendants agreed to pay interest on the trade-in allowance of $653,900. There is certainly no reference in the April 11, 1994 agreement regarding this subject. The plaintiff produced several letters to the defendants in which the plaintiff claimed that he was entitled to interest. The first such letter was dated April 4, 1994, approximately two months after the parties met to discuss the trade-in of the Hatteras. The plaintiff followed up his demand for interest with another letter to the defendants indicating, among other things, that "I earn 40% on my money in my business and, therefore, tying up money in the Hatteras represents a substantial financial sacrifice to me."
Mr. Gardella's first reply to the demand for interest was contained in a letter dated July 29, 1994, stating, among other things, that he had been "searching my memory to recall where I agreed to pay interest on the boat, especially at the high rate you are asking. . . . I have not closed the case on the interest. If you can show me where the interest charge back is in our CT Page 2574 contract, I will discuss this matter with you more."
On November 8, 1994, Mr. Gardella wrote to the plaintiff and denied any obligation to pay interest or compensate the plaintiff for any commission incurred on the sale of the Hatteras in Florida. This letter also stated that the defendants would "still do all we can to move your old [boat]." The plaintiff claims that the defendants waited too long before denying any obligation to pay interest, but the court finds that the defendants repudiated this unilateral demand by the plaintiff in a reasonable time. Moreover, the plaintiff cannot point to any conduct or words amounting to an agreement or acquiescence on the part of the defendants to pay interest. Mr. Gardella first asked the plaintiff the basis for the claim of interest and later explicitly rejected such claim. At worst, the defendants were slow in repudiating the plaintiff's claim in this regard but not fatally so. Other than plaintiffs contention that the defendants agreed to pay interest, there are no other bases on which interest is payable. Accordingly, the claim for interest in the third count of the complaint is rejected.
The fourth count of the complaint refers to misrepresentation and fraud, neither of which have been proven. The defendants prepared an agreement which this court has construed as obliging them to pay the trade-in allowance less the sales price of the Hatteras. The defendants did not make such a payment to the plaintiff because of the contention on their part that their only obligation was to attempt to sell the Hatteras. This is not an unreasonable position and, in any event, does not rise to the level of a fraudulent misrepresentation.
Since the plaintiff is recovering for breach of contract as claimed in the first count of his complaint, there is no need to award extra damages based on the fifth count which alleges breaches of the covenants of good faith and fair dealing. In this count, the plaintiff seeks to recover attorney's fees and costs. The basis for such a claim is the failure of the defendants to promptly repudiate the plaintiff's claim for interest, which has been discussed in connection with the claim for interest in the third count. Thus, the claim for damages under this court is also rejected.
The sixth count claims a violation of CUTPA, and the plaintiff asserts that he is entitled to two times the actual or compensatory damages. The plaintiff seeks approximately $400,000 CT Page 2575 in compensatory damages, plus attorney's fees and costs, so the plaintiff's total claim for damages in this case amounts to over $800,000. The plaintiff was unable, however, to demonstrate that the defendant violated public policy or engaged in unfair methods of competition or unethical or illegal tactics. This is a breach of contract case in which the plaintiff is being awarded damages resulting from the breach of a certain written contract. Hence punitive damages and attorneys fees are not warranted under this count of the complaint. In addition, the plaintiff did not demonstrate that he suffered any ascertainable damages from the alleged CUTPA violation. By virtue of the judgment being entered in this case, the plaintiff is recovering the trade-in allowance for the Hatteras as set forth in the April 11, 1994 agreement.
The only remaining issue is whether the plaintiff is obligated to pay the defendants $30,000 as asserted in their counterclaim. The April 11, 1994 agreement provides that "Mr. Keefe also will hold back $30,000 pending completion of work by Azimut prior to shipment from Italy to U.S. per agreement with Jack Haight." This work was completed, so the defendants have sustained their burden of proof on their counterclaim.
Thus, the plaintiff is entitled to recover from the defendant Cove Marina the sum of $128,900, less $30,000 on the counterclaim, for a total judgment of $98,900. This judgment is not entered against the individual defendant, James Gardella, as he was acting as an officer of the defendant corporation, Cove Marina, at all pertinent times, and there is no basis to suggest that the is individually liable for the debts of the corporation. Costs shall not be taxed.
So Ordered.
Dated at Stamford, Connecticut, this 11th day of March, 1998.
William B. Lewis, Judge